[No. 507.   August 24, 1892.]

## TERRITORY OF NEW MEXICO ex rel. CHARLES W. DUDROW, Plaintiff in Error, v. L. BRADFORD PRINCE, Governor, et al. Defendants in Error.

STATUTES—SECTION 2, CHAPTER 94, LAWS, 1891, CONSTRUED.—In a proceeding by mandamus, by the holder of a territorial warrant, against the governor, auditor, and treasurer of the territory, to compel them to issue to him in lieu thereof territorial interest-bearing bonds in conformity with the provisions of section 6 of an act of February 8, 1889, in relation to the finances of the territory, based on section 2, chapter 94, Laws, 1891, which was part of an amended bill in the hands of a committee, appointed to make amendments, who, finding it impossible to rewrite the same before the hour of final adjournment of the session by limitation, inserted after section 1, and directly above section 2, formerly unamended for want of time, a note that, "the amendments in section 2 coincide with those of preceding section throughout, and amendments and notes to be changed to same', —Held:   The provisions cited, taken from the unamended section 2, authorizing the governor and treasurer to take up outstanding warrants for indebtedness against the territory, and issue in lieu thereof interest-bearing bonds, were never passed by the legislature, and the peremptory writ was properly denied.

ERROR, from a judgment in favor of  defendants, to the First Judicial District Court, Santa Fe County. Judgment affirmed.

The facts are stated in the opinion of the court.

F. W. CLANCY for plaintiff in error.

The question to be decided is purely one of law, and this court will take judicial notice of what the law of the territory is on the subject.   Town v. Perkins, 94 U. S. 267; Walnut v. Wade, 103 U. S. 689.

Whenever the question of the existence of a statute arises in a court of law, the judge has the right to

resort to any source of information which, in its nature is capable of conveying to his mind a clear and satisfactory answer to such question. Blake v. National Bank, 23 Wall. 319; Gardner v. Collector, 6 Id. 508; Suth. on Stat. Const., sec. 294.

It is the legislative intent, as expressed in the statute, which is to be ascertained. Such intent to be efficient must be set out in a statute. Suth. on Stat. Const., sec. 234, p. 310.

A statute is "the written law of the legislature solemnly expressed according to the forms necessary to constitute it the law of the state." Bouv. Law Dict., tit. "Statute;" Endlich on Stat., sec. 1, note 1. See, also, Black's Law Dict., p. 1121; Anderson's Law Dict., p. 969; 1 Kent, Com. 446.

To ascertain the legislative intent resort can not be had to the journals of the legislature, nor to other evidence extrinsic to the act itself, unless such resort be authorized by constitutional or legislative provisions. Suth. on Stat. Const., secs. 35, 183; Pangborn v. Young, 32 N. J. Law, 29; Sherman v. Story, 30 Cal. 253; Field v. Clark, 143 U. S. 672–680.

The uncertainty and ambiguity of the note recited in the act make it inoperative and void. Drake v. Drake, 4 Dev. 115; State v. Pantlow, 91 N. C. 553.

EDWARD L. BARTLETT, solicitor general, for defendants in error.

In the absence of any precedents for a case like this, the general rules for interpretation of the legislative intent must govern in all cases where it can be ascertained from the act itself, its context, title, preamble, and the journals of the body which passed it, and any other aids to that end. Suth. Stat. Const., secs. 234, 260, 300, 292; Blake v. National Bank, 23 Wall. (U. S.) 319.

This court must act on the record; it can not take testimony. Compiled Laws, sec. 2190.

In construing a statute the effects and consequences to the public will be considered. Suth. Stat. Const., secs. 322–324; 7 Lawson on Rights and Rem., sec. 3773, and cases cited.

As to the language used by the conference committee that the amendments in section 2 "coincide" with those of the preceding section, the word "shall" should appear before "coincide" to make the intent clear, and the law will supply it when necessary. Suth. on Stat. Const., sec. 260, and cases cited.

O'BRIEN, C. J.—On the twelfth day of March, 1892, on the petition of the relator, an alternative writ of mandamus was issued out of the district court for the county of Santa Fe, directed to the governor, auditor and treasurer of the territory, reciting, inter alia, that said Dudrow had filed an information alleging that he was the holder of an outstanding territorial warrant for the sum of $272.90, and that, as such holder, he was entitled, by law, to have said warrant converted into territorial interest-bearing bonds, issuable in conformity with the provisions of section 6 of an act entitled, "An act relating to the finances of the territory of New Mexico," approved February 8, 1889. It then alleged a demand made upon the respondents for the execution and delivery of such bonds, and their refusal to comply therewith, on the sole ground that the issuance thereof was unauthorized by law. The writ commanded the respondents to make and deliver the bonds, or to show cause for their failure so to do. In their answer to the writ they admitted all the allegations thereof, with the exception that, under the laws of the territory, they had no authority to issue such bonds in exchange for relator's warrant. Upon a trial of the issue so made, the court denied the application,

dismissed the alternative writ, and ordered judgment for cost against the relator. Thereupon the latter brought the cause to this court for review, upon the ground of error in the court's refusal to award a peremptory writ, so that the only question submitted for determination is, was there any territorial enactment in force at the time, making it the duty of the respondents, the defendants in error, to issue to the relator the interest-bearing bond or bonds demanded in lieu of the warrant which he held?

The source of the contention and of the honest difference of opinion between the relator and the respondents in reference to their respective rights and duties must be sought in the peculiar circumstances STATUTES: construction of section 2, chapter 94, Laws, 1891. existing when chapter 94, Laws, 1891 (the Finance Bill), passed the legislature. The object of this act was to provide funds and make appropriations for the forty-second and forty-third fiscal years, "and for other purposes." The forty-second fiscal year began on the first Monday of March, 1891, and the forty-third on the corresponding day in the year 1892. The session of the legislature at which the act in question passed expired by limitation on the twenty-sixth of February, 1891. Section 1 of the act provided funds and made all needed appropriations for the forty-second fiscal year; section 2, by its terms, was intended to make provisions for the forty-third fiscal year. The relator bases his right to the remedy sought in this action upon a certain "proviso," which he maintains, and which the respondents deny, is found in section 2 of the act.

In order to make our language intelligible, an explanation must be premised. The act in question (chapter 94, Laws, 1891, "Finance Bill"), embracing twenty sections, fills forty-three pages, of which sections 1 and 2 occupy thirty-eight in the printed volume of the session laws of that year. Each of these two

sections is unusually complex, surcharged with a strange variety of detailed items and multifarious provisions. The bill as originally introduced in the council on January 23, known as "Council Bill No. 81," passed that body on the sixth day of February. When transmitted it found little favor in the other chamber. On the eve of the final adjournment of the legislature, it was indefinitely postponed by the house, and in lieu thereof "House Substitute for Council Bill No. 81" was offered, considered, read a third time, and passed. The latter bill, when transmitted to the council, was not approved, and instead thereof that body adopted a bill bearing the elongated title of "Council Substitute for House Substitute for Council Bill No. 81." On the following day, February 26, the last legal day of the session, the house was notified officially that the council had appointed a committee of three for the purpose of conferring with a like committee of the house in regard to the passage of what was originally known as "Council Bill No. 81," and requesting the house to appoint a like committee. This was immediately done. The joint conference committee met, deliberated, and reported their inability to agree upon the terms of "House Substitute for Council Bill No. 81." After various and protracted meetings on the same day, the last of the session, the joint conference committee reported that they had agreed and recommended for passage the bill known as "Council Substitute for House Substitute for Council Bill No. 81," whereupon the rules were suspended, and the latter bill was unanimously passed. The conferees, it appears, had barely time to rewrite section 1 of the bill, and, finding it impossible before the hour of final adjournment to amend in terms and rewrite section 2, they appended after section 1, and directly above section 2, formally unamended for want of time, the following note: "The amendments in [following] section 2 [for 43d fiscal

year] [shall] coincide with those of preceding section throughout, and amendments and notes to be changed to the same." This was signed by the six conferees. The words "following" and "shall," in brackets, we have inserted to remove all doubt as to the meaning. Then follows section 2, "as filed," unamended in terms, containing inter alia, the following provisions, upon which the relator bases his right of action: "For the redemption of warrants, any surplus which may exist over and above the funds necessary to pay the current expenses of the territory, as provided for in this act, and all outstanding warrants · drawn after March 4, 1889, on account of indebtedness previous to said date, shall bear interest at the rate of six per cent per annum from the date of issue: provided, that any person holding outstanding warrants of the territory may at any time convert the same into bonds of the territory bearing interest at the rate of six per cent per annum, such bonds to be issued as near as possible in conformity with the provisions of section 6 of an act entitled, 'An act relating to the finances of the territory of New Mexico,' approved February 8, 1889, said bonds to be paid in ten years after date thereof; the cost of printing and issuing said bonds to be paid for by the holder of said warrants." Section 6 of the act of 1889, above referred to, provides, among other things, that "said bonds shall be signed by the governor and treasurer, and countersigned by the auditor." The provisions above cited, claimed by the relator to be a part of chapter 94, Laws, 1891, are not found in section 1 nor in section 2 of the act as amended, according to the terms of the note of the joint conference committee. It is found, it is true, as part of the unamended section, filed with the secretary, and as such was inserted in the printed volume:

In view of all the facts, we have no hesitancy in holding that the provisions cited, taken from the un-

amended section 2, were never passed by the legislature. No such language is found in section 1 of the law, and we are clearly of the opinion that it was expressly eliminated from section 2 by the concurrent act of both houses, in approving and adopting the report of the joint conference committee, and in passing the act in accordance with the terms of that report. Inasmuch as the printed volume of the Laws of 1891 contains two versions of section 2 of chapter 94, and as they are in many respects variant and inconsistent, and their presence in superposition may lead to confusion and doubt, we hold that, as far as we are able to determine from the case before us, an examination of the original bill and the journals of the two houses, section 2, as found in the printed volume of the Laws of 1891, beginning on page 219, and ending at page 230, was legally passed, and is a valid enactment; and that all of the provisions found in the other section 2 of said chapter, beginning at page 207, and ending at page 219, in said printed volume, were not legally passed by the legislature, and are of no binding force or effect.

It is needless to say more. This court can not afford to be technical with the lawmaking power of the territory. Our province is to interpret and obey the will, not to criticise the modus operandi, or dictate the policy, of a legislature, created by the power of the general government. In justice to the representatives of the people it must not be forgotten that the legislature was on the eve of a final adjournment when the bill passed. The house had refused to pass the finance bill adopted by the council. A final adjournment without such an enactment would be more than a calamity,—it would be a public disaster. To prevent such a misfortune, haste and disregard of the usual formalities seemed imperative. Notwithstanding all this, it scarcely admits of doubt that the legislature clearly expressed

VOL. 6 N. M.—41

the intent, when it adopted the report of the joint conference committee, that section 2 of chapter 94 should contain the substantial provisions embraced in section 1, and that all provisions found in the former, not embraced in the latter, should be expunged. The principle that "id certum est, quod certum reddi potest," is as applicable to legislative bodies as to individuals.

We have not overlooked the many serious objections raised by the learned counsel for plaintiff in error in his oral argument, as well as in his able brief, to the many uncertainties and errors incident to this "clumsy" sort of legislation. As to the point upon which he very strenuously insisted that section 2 of the act, which we hold to be good law, contains certain provisions not found in section 1, we must say that, even if he is correct, that fact does not improve his condition in reference to the provision upon which he rests his right to maintain this action. That provision is found in neither section. If the section 2, which passed in accordance with the report of the committee, contains provisions not found in section 1, of doubtful validity, that does not justify his position. Such doubtful provisions will be determined by the courts when they arise, but they are not in this case. All that is necessary for us now to decide is that the legislature, in adopting the report of the conference committee, virtually passed section 2, as recommended by that report; that the provisions authorizing the respondents to issue interest-bearing bonds in lieu of certain territorial warrants were not embraced in that recommendation, and hence that the relator has no legal ground upon which to base the right for which he contends in this action. Section 1 must be the norma by which to determine what parts of the original, uncorrected draft of section 2 were passed in accordance with the recommendation of the committee's report. The territorial secretary is the legal custodian of all these documents, and that

officer is eminently entitled to the presumption that in collating the two sections, and in preparing and arranging section 2, he included no provision therein not fully authorized by legislative sanction. For us to adopt any other course in such an emergency, when examining the acts of a coordinate branch of the territorial government, might prove a source of mental gratification to legal erudition, and the varied refinements of professional genius, but would as unmistakably lead to the perversion of judicial discretion and the impairment of the freedom of legislative action.

For the reasons and in the manner stated, it must be apparent that section 2, though not actually, was potentially, amended by the concurrent act of both legislative houses as legally as section 1. This ought to be sufficient, especially when the political safety of the territory for a whole year was dependent upon the validity of the act.

Finding no error in the record, the order and judgment of the court below are affirmed.

LEE, McFIE, and FREEMAN, JJ., concur.